# BORRELLI & ASSOCIATES
## P.L.L.C.
www.employmentlawyernewyork.com

| | |
|---|---|
| 655 Third Avenue | 910 Franklin Avenue |
| Suite 1821 | Suite 200 |
| New York, NY 10017 | Garden City, NY 11530 |
| Tel. No. 212.679.5000 | Tel. No. 516.248.5550 |
| Fax No. 212.679.5005 | Fax No. 516.248.6027 |

June 8, 2022

*Via ECF Only*
The Honorable Brian M. Cogan
United States District Judge for the
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Estate of Mireille Eliacin, et al. v. Universal Protection Service, LLC, d/b/a Allied Universal Protection Services; Docket No.: 21-cv-00440 (BMC)*

Dear Judge Cogan:

    As the Court knows, we represent the Estate of Mireille Eliacin, opt-in Plaintiff Destini Hines, Eliacin's surviving daughter, whose claims are stayed pending arbitration, as well as opt-in Plaintiff Steven Goldberg, (together, where appropriate, as "Plaintiffs"), in this wage and hour matter against Defendant Universal Protection Service, LLC, d/b/a Allied Universal Protection Services ("Defendant"), arising under, *inter alia*, the overtime provisions of the Fair Labor Standards Act ("FLSA"). As the parties advised the Court on May 16, 2022, ECF 45, they have reached a settlement in principle following lengthy negotiations, which they have now reduced to formal written agreements ("Agreements"), attached hereto as **Exhibits A, B, and C**. We write now, on behalf of the parties, to explain the terms of the settlement with respect to Plaintiffs' FLSA claims, and to request that the Court lift the stay of Hines's claims, approve of the settlement of all of the FLSA claims in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), and dismiss this case with prejudice pursuant to Rule 41(a)(2).[1]

---

[1] Plaintiffs also bring claims in this case for Defendant's alleged violations of the New York Labor Law ("NYLL"), which while resolved as part of the parties' Agreements, do not require court approval for dismissal under *Cheeks*. *See, e.g., Gallardo v. PS Chicken Inc.*, 285 F. Supp. 3d 549, 553 (E.D.N.Y. 2018); *Feliz v. Parkoff Operating Corp.*, 2018 WL 1581991, at *3 (S.D.N.Y. Mar. 27, 2018).

I. **Procedural History and Settlement Agreements' Terms**

On January 27, 2021, former named-Plaintiff Mireille Eliacin initiated this action seeking relief for Defendant's alleged violations of, *inter alia*, the overtime provisions of the FLSA. In her Complaint, Eliacin alleged that Defendant - - a corporation that operates a security company - - employed her as a non-managerial security guard from January 2018 through August 15, 2019, in East Elmhurst, New York. Eliacin further alleged that throughout her employment, she frequently worked over forty hours in a week, but Defendant would pay Eliacin for only forty hours of work for such a week, and then for the following week, Defendant would reduce Eliacin's hours worked by the number of overtime hours worked in the prior week, and then pay Eliacin overtime hours from the previous week at a straight time rate during that subsequent week, resulting in overtime violations under, *inter alia*, the FLSA. ECF 1. Additionally, on January 27, 2021, both Eliacin and Hines filed their consents to join this action. ECF 4-5. On March 1, 2021, Eliacin filed an Amended Complaint to correct Defendant's name. ECF 13. On April 8, 2021, this Court entered a discovery scheduling order. ECF 23. Thereafter, Plaintiffs prepared and served on Defendant discovery requests, as well as prepared and produced to Defendant detailed, week-by-week damages calculations for Plaintiffs. On May 4, 2021, Defendant filed its Answer, denying the Amended Complaint's material allegations. ECF 24.

On May 7, 2021, Eliacin filed a motion for conditional certification of an FLSA collective action and related relief. ECF 26. But on May 13, 2021, Eliacin passed away, and on May 28, 2021, Defendant filed a motion requesting a temporary stay of all claims. ECF 32. On June 2, 2021, by Minute Order, the Court granted Defendant's motion and stayed all deadlines, allowing time to substitute Eliacin's estate as a party under Federal Rule of Civil Procedure 25. Later that same day, Goldberg, who is still a current employee of Defendant, filed his consent to join this action. ECF 33. On June 11, 2021, the Court so-ordered the parties' stipulation and consent order to stay Hines's claims pending arbitration. ECF 36.

Over the course of the next eight months, Plaintiffs' counsel filed, in Richmond County Surrogate's Court, all documentation required for Hines to be appointed as Eliacin's executor and to be issued temporary limited letters of administration. The surrogate's court granted that relief on March 10, 2022. Thus, on March 17, 2022, the parties filed a stipulation and order to amend the caption to reflect that Eliacin, deceased, would be represented in this action by her surviving daughter and appointed administrator, Destini Hines, ECF 43, and the Court thereafter so-ordered that stipulation. ECF 44.

Finally, after numerous settlement discussions, and following multiple status conferences, the parties ultimately agreed in principle to resolve all Plaintiffs' claims, for the total amount of $49,000.00 ("Settlement Sum"), which will be distributed as follows:

| Payment Recipient[2] | Total Sum Due | Share of Costs | Attorneys' Fees | W-4 Amount | 1099 Amount | Net |
|---|---|---|---|---|---|---|
| Estate of Mireille Eliacin | $17.500.00 | $1,362.75 | $5,325.29 | $5,405.98 | $5,181.13 | $10,811.96 |
| Destini Hines | $14,000.00 | $1,362.75 | $4,170.29 | $4,233.48 | $4,233.48 | $8.466.96 |
| Steven Goldberg | $17,500.00 | $1,362.74 | $5,325.30 | $5,405.98 | $5,405.98 | $10,811.96 |
| Borrelli & Associates, P.L.L.C. | | $4,088.24 | $14,820.88 | | | |

Regarding Plaintiffs' counsel's fees and costs, counsel seeks approval of the total amount of $18,909.12, representing out-of-pocket litigation expenses of $4,088.24, and 33.33% of the *net* Settlement Sum after deducting expenses, amounting to $14,820.88. The Settlement Sum will be paid within twenty-one days of the Court's approval of the settlement as fair and reasonable under *Cheeks*. In the event of non-payment, after notice and an opportunity to cure, Defendant agrees that Plaintiffs may apply to the Court, which will retain jurisdiction to enforce the agreement, for the entry of judgment in the amount of any unpaid balance, plus attorneys' fees and costs.

For the reasons described below, Plaintiffs, on behalf of the parties, respectfully submit that the amounts and allocations, as well as all other terms, are fair and reasonable under the circumstances of this case.

## II.    The Agreement is Fair and Reasonable

FLSA claims may only be settled and dismissed under Rule 41 if they are approved by the Court. *Cheeks*, 796 F.3d at 206-07 (with prejudice); *see also Samake v. Thunder Lube, Inc.*, 24 F.4th 804, 810 (2d Cir. 2022) (without prejudice). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id.* (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* (citation omitted).

In evaluating the fairness of a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332,

---

[2] Plaintiffs' individual shares of the settlement represent their alleged damages for all claims brought in this case, including those under New York law, which vary based on their length of employment and alleged hours of work with Defendant.

3

335-36 (S.D.N.Y. 2012), which the Second Circuit has twice recently endorsed. *See Fisher v. SD Protection Inc.*, 948 F.3d 593, 600 (2d Cir. 2020); *Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 413 (2d Cir. 2019). The *Wolinsky* factors consider: (a) the plaintiff's range of possible recovery; (b) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (c) the seriousness of the litigation risks faced by the parties; (d) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (e) the possibility of fraud or collusion. *See Chen v. Xpres Spa at Terminal 4 JFK, LLC,* 2021 WL 4487835, at *4 (E.D.N.Y. Oct. 1, 2021) (Cogan, *J.*) (citing and applying *Wolinsky* factors). The parties submit that their settlements of Plaintiffs' FLSA claims are fair and reasonable based on an analysis of the *Wolinsky* factors.

### A. *Range of Possible Recovery*

Eliacin alleged that on every-other week throughout her employment, she routinely worked fifty-six hours per week, Hines alleges that on every other-week from November 2019 until November 2020, she routinely worked forty-eight hours per week, and Goldberg alleges that from January 2018 until December 31, 2018, he routinely worked seventy-five hours per week, and from January 2019 until December 31, 2020, he routinely worked forty-five hours per week. All Plaintiffs allege that Defendant paid them on an hourly basis for all hours that they worked in a week, Eliacin and Hines using the scheme detailed above, and Goldberg simply by paying straight-time for all hours worked each week. Defendant denies totally denies these allegations, contends that Plaintiffs worked fewer than forty hours per week for the most part, and maintains that if they worked over forty hours in a week, Defendant properly paid them for those hours. Defendant also claims that it at all times acted in good faith.

Based on Eliacin's, Hines's, and Goldberg's collective records and recollection as to their hours worked, and applying the maximum three-year FLSA limitations period, *see* 29 U.S.C. § 255(a), their maximum FLSA compensatory damages are $8,444.42, $4,836.00, and $25,845.80, respectively, which amounts can be doubled for liquidated damages. Again, Defendant continues to maintain that not only did it pay Plaintiffs properly, but that Plaintiffs did not work the hours that they claimed and that Defendant at all times acted in good faith, and therefore it does not owe Plaintiffs any overtime damages. Thus, taking Plaintiffs' allegations and recollections as true, the range of recovery for their FLSA claims is between $16,888.84 and zero, $9,672.00 and zero, and $51,591.60 and zero, respectively.[3]

Eliacin's estate's recovery from the Settlement Sum, after deducting attorneys' fees and costs, would be $10,811.96, representing 64% of her best-day recovery under the FLSA without

---

[3] Eliacin's total maximum recoverable damages under the NYLL are $26,888.83. Hines's total maximum recoverable damages under the NYLL are $19,672.00. Goldberg's total maximum recoverable damages under the NYLL are $61,591.60.

4

liquidated damages, and 40% when factoring in liquidated damages. Hines's recovery from the Settlement Sum, after deducting attorneys' fees and costs, would be $8.466.96, representing 88% of her best-day recovery under the FLSA without liquidated damages, and 43% when factoring in liquidated damages. Goldberg's recovery from the Settlement Sum, after deducting attorneys' fees and costs, would be $10,811.96, representing 42% of his best-day recovery under the FLSA without liquidated damages, and 18% when factoring in liquidated damages. The outcomes here are therefore highly reasonable. *See Gervacio v. ARJ Laundry Servs. Inc.*, 2019 WL 330631, at *1 (S.D.N.Y. Jan. 25, 2019) (finding twenty percent of maximum recovery reasonable in light of circumstances); *Villanueva v. 179 Third Avenue Rest Inc.*, 2018 WL 4100479, at *2 (S.D.N.Y. Aug. 28, 2018) (finding "less than six percent of estimated maximum recovery" to be reasonable in light of the circumstances).

### B.   *Avoiding Burdens and Potential Risks of Continued Litigation*

Regarding the second and third *Wolinsky* factors, if the parties failed to reach a settlement, written discovery, depositions of the parties, and thereafter competing motions for summary judgment would have surely followed. Thereafter, the parties were to proceed to a trial on the merits of all of Plaintiffs' claims, a task that would have been daunting for Eliacin's estate in the absence of Eliacin's testimony. At bottom, even if successful at the summary judgment and trial stages, Plaintiffs faced a difficult challenge in recovering a greater judgment than the Settlement Sum. That is because Plaintiffs understand that if they were to continue with the litigation - - even if successful - - they may never receive more money than what Defendant is now offering. Indeed, courts have recognized that discovery, continued litigation, and eventual trial practice may "meaningfully decrease possible recovery for Plaintiff[s]." *Flores v. Mama Lombardi's of Holbrook, Inc.*, 2015 WL 2374515, at *5 (E.D.N.Y. May 18, 2015). With litigation risks and expenses only expected to substantially rise for all parties in this matter, the Settlement Sum is fair and reasonable.

### C.   *Arm's-Length Bargaining, No Fraud or Collusion, No Cheeks Admonishments*

As to whether the settlements are the product of arm's-length bargaining and are a reasonable, non-collusive resolution of the case, the settlement negotiations were protracted and concluded after many negotiations between counsel, which spanned from September 3, 2021, to May 16, 2022, and only after Defendant moved to stay the case and compel Hines's claims to arbitration. There was no fraud or collusion here. *E.g. Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411, 420 (S.D.N.Y. 2014) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement") (internal citations and quotations omitted).

Furthermore, the Agreements do not contain any terms that would militate against the Court approving them. For instance, Plaintiffs have not agreed to a general release of all claims,

but rather, with respect to Goldberg, a release of all wage claims under the FLSA and NYLL, and with respect to Eliacin and Hines, a release of all claims arising out of her employment that is mutual in all respects, thereby allowing the parties to "walk[] away from their relationship" entirely. *Souza v. 65 St. Marks Bistro*, 2015 WL 727174, at *5-6 (S.D.N.Y. Nov. 6, 2015) ("[a] mutual release will ensure that both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes"); *see also Plizga v. Little Pol. Rest. Inc.*, 2016 WL 9307474, at *6 (S.D.N.Y. July 18, 2016) (approving "broad but mutual" provisions that released "both plaintiff and defendants from liability for any past claims each might have against the other" where plaintiff was "no longer an employee of the defendants, eliminating the danger that the release was obtained through improper job-related pressure"). Moreover, with respect to Goldberg, a current employee, the Agreement contains an appropriately tailored limited release of wage and hour claims related to the same claims and facts asserted in this lawsuit.[4]

Likewise, the Agreement does not contain a confidentiality clause or non-disparagement clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." *Flood v. Carlson Restaurants Inc.*, 2015 WL 4111668, at *1 (S.D.N.Y. July 6, 2015) (citing *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 177-78 (S.D.N.Y. Mar. 30, 2015)); *also compare Ezpino v. CDL Underground Specialists, Inc.*, 2017 WL 3037483, at *2-3 (E.D.N.Y. June 30, 2017) (approving settlement agreement where it did not contain a confidentiality provision); *with Gonzalez v. Lovin Oven Catering of Suffolk, Inc.,* 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (citing Cheeks, 796 F.3d at 206) (declining to approve FLSA settlement containing a confidentiality provision).

### D. *The Requested Attorneys' Fees are Reasonable*

In addition to assessing the reasonableness of the settlement amount, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing *Wolinsky*, 900 F. Supp. 2d at 336). When courts examine attorneys' fee awards in Rule 41 FLSA settlements, it is "to ensure that the interest of Plaintiff's counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Here, the portion of the Settlement Sum attributable to attorneys' fees is $14,820.88, limited to 33.3% of the net Settlement Sum *after* reducing counsel's litigation expenses. While the Second Circuit has recently emphasized that in most "run of the mill" FLSA cases, "it **does not make sense** to limit fees to 33% of the total settlement," *Fisher*, 948 F.3d at 603-604 (emphasis added), courts in this Circuit nevertheless routinely approve attorneys' fee awards at a rate of one-

---

[4] Goldberg and Defendant *do* intend to negotiate and finalize a separation agreement at some point in the near future, but that agreement is not contingent on the Court's approval of this settlement.

6

third of the total gross settlement, which is less than Plaintiffs' counsel seeks here. *See Fresno County Employees' Retirement Assoc. v. Isaacson/Weaver Family Trust*, 925 F.3d 63, 71 (2d Cir. 2019) (quoting *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010)) ("[W]e have previously noted that 'the percentage method has the advantage of aligning the interests of plaintiffs and their attorneys more fully'"); *see also Cregg v. Firstservice Residential N.Y., Inc.*, Case No. 15-cv-3876-LB, Dkt. No. 14 at *4-5 (E.D.N.Y. Dec. 9, 2015) (approving one-third attorneys' fees award as "the norm in this Circuit"); *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."); *Thornhill v. CVS Pharmacy, Inc.*, 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014) (collecting cases setting attorneys' fees at one-third of the settlement).

Additionally, the reasonableness of Plaintiffs' counsel's requested fee is further solidified by "[a]pplying the lodestar method as a cross check." *See Fresno County Employees' Retirement Assoc.*, 925 F.3d at 72 (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)) ("district courts should use the lodestar as a 'baseline' against which to cross-check a percentage fee"). In order to calculate the lodestar check, counsel multiplied the attorney and paralegal hours spent on the case by each individual's reasonable hourly rate. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007). As of June 7, 2022, counsel has billed 256.00 hours in total on this matter - - an adversarial litigated case as detailed herein - - amounting to $63,402.00 in fees, an amount obviously well in excess of counsel's attorneys' fees requested herein. This figure is based on hourly rates of: $400.00 per hour for Michael J. Borrelli, Esq., Plaintiffs' counsel's firm's managing partner; $350.00 per hour for Alexander T. Coleman, Esq., the firm's partner who supervised all associate work in this case; $250.00 per hour for Matthew J. Farnworth, Esq., senior associate and former lead associate on this matter before the undersigned assumed primary daily responsibility; $250.00 per hour for the undersigned, Danielle Petretta, Esq., senior associate and lead counsel on this matter as of August 12, 2021; $200.00 per hour for other associates working on the matter; and $90.00 for law clerks and paralegals. Courts routinely approve these rates in similar cases. *See, e.g., Feuer et al. v. Cornerstone Hotels Corp. and Naeem Butt,* 2:14-cv-05388-JFB-SIL, Dkt. No. 121, Order (E.D.N.Y. Oct. 20, 2021); *Caltenco v. G.H. Food Inc., d/b/a Natural Garden, and Gurdip Singh*, 1:16-cv-01705-VMS, Dkt. No. 112, Memorandum and Order (E.D.N.Y Sept. 30, 2021). Plaintiffs' counsel's contemporaneous billing records are attached hereto as **Exhibit D**.

Additionally, Plaintiffs' counsel seeks reimbursement for out-of-pocket litigation expenses in the amount of $4,088.24, comprised of the initial filing fee, service of process fees, postage, research, PACER fees, and a private investigator hired to speak with potential witnesses. Plaintiffs' counsel's expense report reflecting these costs is attached hereto as **Exhibit E.**

Accordingly, Plaintiffs' counsel's request for a total of $18,909.12 is entirely reasonable.

7

### III.     Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court: lift the stay of Hines's claims; dismiss all claims in this matter with prejudice; and retain jurisdiction to enforce the terms of the parties' Agreements should that become necessary. A proposed order of dismissal is attached hereto as **Exhibit F**.

We thank the Court for its time and attention to this matter.

Respectfully submitted,

Danielle Petretta, Esq.
*For the Firm*

C:     Counsel for Defendant (*via* ECF)